### In the Matter of WALDICK AERO–SPACE DEVICES, INC., Debtor.

### FERDINAND J. SNOW COMPANY, INC., and Snow Financial Corp., Plaintiffs,

v.

### WALDICK AERO–SPACE DEVICES, INC., and Richard R. Stout, Trustee, Defendants.

### Bankruptcy No. 83–01400. Adv. No. 83–0816TS.

United States Bankruptcy Court, D. New Jersey.

April 26, 1985.

---

**2.** Cf. In re. Warrior Drilling & Eng'g Co., 18 B.R. 684 (N.D.Ala.1981), modifying 9 B.R. 841, 7 B.C.D. 618 (B.C.N.D.Ala.1981).

Schwartz, Tobia & Stanziale, P.A. by Raymond T. Lyons, Montclair, N.J., for plaintiffs.

Pitney, Hardin, Kipp & Szuch by Timothy R. Greiner, Morristown, N.J., for trustee.

## OPINION

AMEL STARK, Bankruptcy Judge.

This is an adversary proceeding on the complaint of Plaintiffs, Ferdinand J. Snow Company, Inc. (hereinafter "Snow Company") and Snow Financial Corp. (hereinafter "Snow Financial"), in which Plaintiffs claim the right to possession of certain collateral presently in the possession of the Debtor, Waldick Aero-Space Devices, Inc. (hereinafter "Waldick"). The Plaintiffs make such claims based upon ten (10) agreements entered into by Snow Company or Snow Financial and Waldick during the period of 1977 through 1981. While the Agreements are titled and referred to in the Complaint as leases, they are (and have been conceded by Plaintiffs to be) security agreements rather than true leases. The Trustee opposes the relief sought by Plaintiffs, alleging that the aforementioned security interests are unperfected, and are, therefore, voidable by the Trustee pursuant to 11 U.S.C. § 544 and N.J.S.A. 12A:9–301(c)(b).

In the alternative, the Trustee contends that in the event that any security interest created by the Agreements is held to have been perfected, such security interest should extend only to the specific equipment sold under the Agreement. The Trustee maintains that the after acquired property clauses contained in the security agreements are ineffective against the Trustee on the grounds that the principal of the Plaintiffs, Ferdinand J. Snow, was also an officer and stockholder of Waldick, and as such breached his fiduciary duty to Waldick by not making a full disclosure of the contents of the security agreements at the time of their executions.

### FACTS AND PROCEDURAL HISTORY

The Debtor, Waldick Aero-Space Devices, Inc. (Waldick), is in the business of manufacturing quick-release pins which are used in the landing gear of aircraft.

Plaintiff, Ferdinand J. Snow Company, Inc. (Snow Company), is a dealer in new and used machinery. It sells and leases machinery to a variety of businesses, especially machine shop type operations. Over the years, Snow Company has sold and leased many machines to Waldick.

Plaintiff, Snow Financial Corp. (Snow Financial), is a related company to Snow Company, which sometimes acts as an intermediary in financing an equipment or purchase lease.

On March 9, 1983, Waldick filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On March 31, 1984, Defendant, Richard R. Stout (hereinafter "Trustee") was appointed in the Waldick reorganization.

Ferdinand J. Snow is an officer, stockholder and the controlling person of Plaintiffs, Snow Company and Snow Financial. In addition, Ferdinand J. Snow is a one-third (⅓) stockholder and former officer and director of the Debtor, Waldick.

This adversary proceeding concerns ten equipment leases entered into between Snow Company or Snow Financial and Waldick, on which there remained unpaid rental payments when Waldick filed its Chapter 11 petition on March 9, 1983.

On June 14, 1983, Snow Company instituted this adversary proceeding by filing a Complaint[1] seeking relief from the automatic stay pursuant to 11 U.S.C. § 362, to permit Plaintiff to repossess the assets of Waldick in accordance with the terms of the aforementioned equipment leases. On March 5, 1984, Snow Company was granted leave to file an Amended Complaint adding Snow Financial as a Plaintiff.

For the purpose of this adversary proceeding, Plaintiffs concede that the subject equipment leases are, in fact, security agreements,[2] and should therefore be treated as secured transactions pursuant to Article 9 of the Uniform Commercial Code and N.J.S.A. 12A:9.

Each of the ten leases (security agreements) was assigned by the Plaintiffs to an unrelated financing company. Arranged in order corresponding to the Complaint, the leases and the assignees are:

*First Count*—Assigned to Northwest Credit Corp.

1. Lease dated August 20, 1980 (hereinafter "Lease 1")

*Second Count*—Assigned to John P. Maguire & Co., Inc. (which merged into Irving Leasing Corp.)

2. Lease dated August 22, 1977 (hereinafter "Lease 2")

*Third Count*—Assigned to Town and Country Bank

3. Lease dated January 30, 1978 (hereinafter "Lease 3")

4. Lease dated December 11, 1978 (hereinafter "Lease 4")

5. Lease dated March 4, 1980 (hereinafter "Lease 5")

*Fourth Count*—Assigned to Leasing Service Corporation

6. Lease dated October 30, 1978 (hereinafter "Lease 6")

---

1. This proceeding was commenced prior to August 1, 1983, the effective date of the Bankruptcy Rules, which now direct that applications for relief from the automatic stay be by motion rather than by complaint.

2. Although the transactions were structured as equipment leases (which are not covered by Article 9 of the Uniform Commercial Code), in order to guard against the possibility that the leases might be held to constitute installment sales, each lease provided:

"In any jurisdiction where the Uniform Commercial Code is in effect, Lessee grants to Lessor a security interest in the Equipment, and any and all inventory, goods, equipment, machinery, fixtures and assets of any kind, wherever located, now or hereafter belonging to Lessee or in which Lessee has any interest and agrees that any security interest created by this agreement secures any and all obligations of Lessee at any time owing to Lessor, now existing and/or hereafter acquired."
New Jersey adopted the Uniform Commercial Code in 1961 as N.J.S.A. 12A.

7. Lease dated April 30, 1980 (hereinafter "Lease 7")

8. Lease dated June 16, 1980 (hereinafter "Lease 8")

9. Lease dated September 18, 1981 (hereinafter "Lease 9")

10. Lease dated December 10, 1981 (hereinafter "Lease 10")

After Waldick filed its petition, Town and Country Bank called upon Plaintiffs under their recourse obligation to pay the accelerated balance due under Leases 3 through 5. Plaintiffs paid off Town and Country Bank and are now the holders of Leases 3 through 5.

Leasing Service Corporation reassigned Leases 6 through 10 to the Plaintiffs for the purpose of suit and collection. Accordingly, Snow Company sues as assignee of Leasing Service Corporation on Leases 6 through 10.

Irving Leasing Corp. sued Snow Company for the balance due on Lease 2. Snow Company paid the claim and is now subrogated to the rights of Irving Leasing Corp. on Lease 2.

Northwest Credit Corp., holder of Lease 1, intervened in this suit as a party Plaintiff and was granted relief from the automatic stay.

On June 13, 1984, the Trustee made a Motion for Partial Summary Judgment, seeking a judgment declaring that the security interests claimed by Plaintiffs in six of the ten leases are unenforceable against the Trustee.

On June 28, 1984, Plaintiffs filed a Cross Motion for Summary Judgment, seeking a judgment declaring that Plaintiffs have perfected security interests in the assets described in the subject leases, and should, therefore, as a matter of law, be entitled to reclaim the collateral.

PRESENT STATUS OF LEASE CLAIMS

The following four of the Plaintiffs' lease claims have been settled and are not in dispute for the purposes of this Opinion:

(1) *Lease 1*

This is the lease dated August 20, 1980, which was assigned to Northwest Credit Corporation and referred to in the First Count of the Complaint. Northwest Credit was granted relief from the automatic stay allowing it to repossess the collateral listed in the lease. Therefore, relief has been granted to Northwest Credit Corporation, disposing of the First Count of the Complaint.

(2) *Leases 2 and 3*

Plaintiffs have conceded that the financing statements filed to perfect the security interests on Leases 2 and 3 were filed more than five (5) years prior to the date of the Debtor's petition and were not renewed. As a result of Plaintiffs failure to renew these financing statements, the security interests became unperfected prior to the commencement of the case pursuant to N.J.S.A. 12A:9–403(2). Said unperfected security interests were rendered unenforceable against the Trustee pursuant to 11 U.S.C. § 544 and N.J.S.A. 12A:9–301(1)(b). Accordingly, Plaintiffs have withdrawn these claims.

(3) *Lease 5*

The Trustee has conceded that the Plaintiffs do have a perfected security interest in Lease 5.

(4) *The Remaining Leases*

The status of the security interests concerning Leases 4, 6, 7, 8, 9 and 10 are in dispute and will be addressed in the body of this Opinion.

DISCUSSION

I. BACKGROUND

A. *The Uniform Commercial Code*

Section 544 of the Bankruptcy Code arms the Trustee with all of the state law powers of a judicial lien creditor as of the commencement of the case. 11 U.S.C. § 544. Under the Uniform Commercial Code as adopted in New Jersey, an unperfected security interest is subordinate to the rights of "a person who becomes a lien creditor before the security interest is perfected." N.J.S.A. 12A:9–301(1)(b). Accord-

ingly, in order to prevail against the Trustee, Plaintiffs must demonstrate that the security interests created by the Agreements were perfected as of March 9, 1983, the date of the petition herein.

In order to have had perfected security interests in the collateral as of the date of the petition, the Plaintiffs must have had on file sufficient financing statements in the office of the New Jersey Secretary of State. N.J.S.A. 12A:9–302; 12A:9–401. The formal requisites of a financing statement are set forth at N.J.S.A. 12A:9–402(1). In 1981, substantial amendments to Article 9 of the Code were adopted in New Jersey, which became effective on December 1, 1981. Five of the six Agreements in dispute (Leases 4, 6, 7, 8 and 9) were entered into prior to the effective date of the 1981 amendments, while the remaining Agreement (Lease 10) was entered into subsequent to the adoption of the amendments. Accordingly, both the pre-amendment and post-amendment versions of 12A:9–402(1) are pertinent hereto:

*Pre-Amendment*

A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.... *A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.* (emphasis added)

*Amended*

A financing statement is sufficient if it gives the names of the debtor and secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.... *A copy of the security agreement is sufficient as a financing statement if it*

*contains the above information and is signed by the debtor.* A carbon, photographic or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this State. (emphasis added)

A financing statement meeting the foregoing requirements and filed with the Secretary of State is effective for five years. The effectiveness of the financing statement lapses on the expiration of the five year period. N.J.S.A. 12A:9–403(2).

### B. *The Leases*

#### 1. *Lease 4*

■ In connection with this lease, dated December 11, 1978, a financing statement was filed on December 15, 1978 which referred to collateral described "Per the attached Schedule 'A' to be made part hereof." However, an examination of the records of the Secretary of State reveals that no such schedule is attached to the financing statement. Therefore, there is no "statement indicating the types, or describing the items, of collateral" as required by N.J.S.A. 12A:9–402, and the security interest is rendered unperfected and unenforceable against the Trustee pursuant to 11 U.S.C. § 544 and N.J.S.A. 12A:9–301(1)(b).

Plaintiffs have maintained throughout this proceeding that the aforementioned schedule was attached to the financing statement when it was filed on December 15, 1978 and that said schedule subsequently became separated while in the possession of the Secretary of State. However, Plaintiffs have failed to provide the Court with any documentation in support of its contention. Thus, for the reasons stated above, the Court rules in favor of the Trustee on Lease 4.

#### 2. *Leases 6, 9 and 10*

Each of these leases was executed by Waldick and Snow Company. Simultaneous with the execution of these agree-

ments, each lease was assigned by Snow Company to Leasing Service Corporation pursuant to Assignment Clauses contained within each of the respective agreements. Leasing Service Corporation then proceeded to perfect its security interests by filing financing statements for each of the agreements. Attached to the financing statements were the lease agreements executed by Waldick and Snow Company. The financing statements are not signed by the Debtor, Waldick, Instead, the signature line for the debtor bears the notation "SEE ATTACHED". In addition, the financing statements are signed by Leasing Service Corporation as secured party, not by Snow Company, the secured party under the attached agreements.

### 3. *Leases 7 and 8*

Each of these leases was executed by Waldick and Snow Financial. Simultaneous with the execution of these agreements, each lease was assigned by Snow Financial to Leasing Service Corporation pursuant to Assignment Clauses contained within each of the respective agreements. Leasing Service then proceeded to perfect its security interests by filing financing statements for each of the respective agreements. Attached to the financing statements were the lease agreements (security agreements) executed by Waldick and Snow Financial. The financing statements are not signed on behalf of the Debtor, Waldick, or the secured party under the agreements, Snow Financial. Instead, the signature lines under both names bears the notation "SEE ATTACHED".

All the leases (Leases 6 through 10) assigned by the Plaintiffs to Leasing Service Corporation contain the following after acquired property clause:

"In any jurisdiction where the Uniform Commercial Code is in effect, Lessee grants to Lessor a security interest in the equipment and any and all inventory, goods, equipment, machinery, fixtures and assets of every kind, wherever located, now or hereafter belonging to Lessee or in which Lessee has any interest and

agrees that any security interest created by this agreement secures any and all obligations of Lessee at any time owing to Lessor, now existing and/or hereafter incurred."

### C. *The Issue*

The main issue in dispute concerns the Trustee's challenge to the perfection of the security interests of Leases 6 through 10, which were assigned by the Plaintiffs to Leasing Service Corporation. Because Leases 6 through 9 were entered into prior to December 1, 1981, the effective date that the amendments to Article 9 of the Uniform Commercial Code were adopted in New Jersey, they will be addressed separately from Lease 10, which was entered into on December 10, 1981, and is, therefore, subject to the amended version of Article 9.

### II. LEASES 6 THROUGH 9

### A. Contentions of the Parties

Waldick and the Plaintiffs signed duplicate originals of each lease which were forwarded by Plaintiffs to Leasing Service Corporation. Leasing Service forwarded a duplicate original of each lease which was marked "Financing Statement Original—For Filing", together with a separate UCC–1 financing statement, to the Secretary of State for filing. Plaintiffs maintain that upon filing, Leasing Service obtained a perfected security interest in all the equipment specifically described in each lease. Further, Plaintiffs contend that Leasing Service, as a perfected secured creditor of Waldick, made a valid reassignment of its security interests to the Plaintiffs. Therefore, Plaintiffs now maintain that they stand in the shoes of Leasing Service Corporation as its assignee.

It is the Trustee's position that the security interests reassigned to the Plaintiffs by Leasing Service Corporation are unperfected, and therefore, are voidable by the Trustee pursuant to 11 U.S.C. § 544 and N.J. S.A. 12A:9–301(1)(b). The Trustee maintains that the issue posed by these lease agreements and related financing state-

ments is "whether a security interest in personal property may be perfected by a financing statement which is unsigned by the debtor, to which is attached a security agreement to which the creditor indicated on the financing statement is not a party." It is the primary contention of the Trustee that the security interests of Leasing Service were not perfected because the financing statements fail to contain the signature of the Debtor, Waldick, as required by N.J. S.A. 12A:9–402(1). The Trustee also maintains that Leasing Service Corporation, as secured party, can not use the security agreements executed by Waldick and the Plaintiffs for the purpose of perfecting its own security interests in Waldick's collateral.

The Plaintiffs maintain that the flaw in the Trustee's argument is that he separates the financing statement from the security agreement attached to it. Plaintiffs contend that a financing statement which is defective for lack of the debtor's signature, does not invalidate a signed security agreement which is filed as a financing statement in accordance with the requirements of N.J.S.A. 12A:9–402(1).

In support of their position, the Plaintiffs cite *In re McCroskey*, 4 U.C.C.Rep.Serv. 237 (Bkrtcy.S.D.Ohio 1966). In that case, the lease of a beauty shop contained a clause granting the landlord a security interest in the tenant's personal property. The landlord filed a financing statement with a copy of the lease (which was signed by the debtor) attached. The financing statement was signed by the secured party (landlord), but not by the debtor. Instead, in the space for the debtor's signature, the landlord marked "see attached sheet". In holding that the landlord could have perfected his security interest simply by filing the security agreement as a financing statement pursuant to 9–402(1), the Court said:

"Since the lease herein could have been filed for perfecting the security interest, attaching to it a defective financing statement rendered the financing state-

ment mere excess and did not nullify the filing." *In re McCroskey, supra,* at 239. In so holding, the court, in effect, was satisfied that the filing fulfilled the notice requirements of U.C.C. 9–402, so as to put a searching party on notice that an underlying security agreement may be outstanding.

The Trustee argues that *In re McCroskey* should not be followed because the court therein confused the "notice" and "authentication" requirements of Article 9. According to the Trustee, the issue is not whether notice has been accomplished, but whether the financing statement has been properly authenticated by the signatures of the parties as required by the Code. *See In re Maple Contractors, Inc.,* 172 N.J.Super. 348, 356–57, 411 A.2d 1186 (law Div. 1979); *In re Carlstrom,* 3 U.C.C.Rep.Serv. 766, 769–71 (Bkrtcy.D.Me.1966). Both *Maple Contractors* and *Carlstrom* hold that a secured creditor who files a financing statement which is deficient for lack of the debtor's signature can not perfect its security interest by attaching a valid security agreement. *In re Maple Contractors, supra,* 411 A.2d at 1189; *In re Carlstrom, supra,* at 767. In reaching its decision, the Court in *Maple Contractors* held:

"In determining this matter, however, the court feels that the above-cited policy concerning the theory of 'notice filing' is subordinate to or must be construed with the mandatory requirement that the debtor must sign the financing statement. Otherwise, any financing statement, however prepared, would constitute notice and give priority regardless of intrinsic validity. *Maple Contractors, supra.* 172 N.J.Super. at 356, 411 A.2d 1186.

B. Discussion by the Court

It is apparent to the Court that both parties perceive that the outcome of the case at bar will turn on the issue of the necessity of the debtor's signature on a financing statement pursuant to N.J.S.A. 12A:9–402(1). It is the opinion of the Court that this is not the central issue, and ac-

cordingly, the Court will decide the validity of the security interests in question upon different legal grounds. However, since both parties have expended the majority of their efforts on this issue, the Court will discuss the merits of their respective positions.

N.J.S.A. 12A:9–402(1) states that a copy of a security agreement is sufficient as a financing statement if it contains the following:

(1) the signature of the debtor;

(2) the signature of the secured party;

(3) gives an address of the secured party from which information concerning the security interest may be obtained;

(4) gives a mailing address of the debtor; and,

(5) contains a statement describing the items of collateral

■ It is the opinion of the Court that a security agreement which is filed as a financing statement and contains the above information, obtains a perfected status, and said perfection can not be invalidated by the attaching of a defective financing statement. To hold otherwise, would be contrary to N.J.S.A. 12A:9–402(1), which specifically grants perfected status to such a filing. In this regard, the Court would adopt the holding reached in *In re McCroskey, supra.*

The primary purpose of a financing statement is to put a searching party on notice that an underlying security agreement may be outstanding. *See* Comment of New Jersey Study N.J.S.A. 12A:9–402; Uniform Commercial Code Comment to N.J.S.A. 12A:9–402; *Pinkerton's Inc. v. John A. Roebling Steel Corp.,* 186 N.J.Super. 10, 13, 450 A.2d 1336 (Law Div.1982); *In re Maple Contractors, Inc., supra.* at 356. The intention of N.J.S.A. 12A:9–402 is that the "inquiring party be under a duty and be able by virtue of the financing statement to make sufficient further inquiries to determine the nature of the collateral relationship." *Pinkerton's Inc. v. John A. Roebling Steel Corp., supra.* 186 N.J.Super. at 14, 450 A.2d 1336; *Maple Contractors, supra.* 172 N.J.Super. at 356, 411 A.2d 1186.

In the Court's opinion, a security agreement properly filed as a financing statement does fulfill the notice purpose of N.J.S.A. 12A:9–402, despite the attachment of a defective financing statement. Further, such a holding would comply with that reached by the courts in *In re Maple Contractors* and *In re Carlstrom, supra.*, that the debtor sign the financing statement. A security agreement filed as a financing statement does not require the filing of an additional financing statement for the purpose of authenticating the signatures on the security agreement. Once the secured party files a security agreement which contains the information required by N.J.S.A. 12A:9–402(1), the secured party need not take any further steps to perfect its security interest. As the bankruptcy court stated in *In re McCroskey, supra.*, the filing of an additional financing statement would be "mere excess". *McCroskey, supra.* 4 U.C. C.Rep. at 239. Therefore, the reasoning advanced by the courts in *Maple Contractors* and *Carlstrom,* that the debtor's signature on the separate financing statement is necessary for authentication purposes, is contrary to N.J.S.A. 12A:9–402(1).

C. Opinion of the Court

■ It is the opinion of the Court that Leasing Service Corporation did not perfect its security interests in the collateral described in leases 6 through 9.

Section 544 of the Bankruptcy Code arms the Trustee with all of the state law powers of a judicial lien creditor as of the commencement of the case. 11 U.S.C. § 544. Under the Uniform Commercial Code as adopted in New Jersey, an unperfected security interest is subordinate to the rights of "a person who becomes a lien creditor before the security interest is perfected." N.J.S.A. 12A:9–301(1)(b). Accordingly, in order to prevail against the Trustee, Plaintiffs must demonstrate that the security interests created by the Agreements were perfected as of the date of the petition.

In order to perfect a security interest, a financing statement must be filed, unless the particular security interest falls under one of the exceptions listed in N.J.S.A. 12A:9–302(1). In the case at bar, Plaintiffs' security interests did not fall under one of these exceptions. *See* N.J.S.A. 12A:9–302(1). Therefore, in order to have perfected their security interests, Plaintiffs were required to file financing statements pursuant to N.J.S.A. 12A:9–402(1). *See* N.J.S.A. 12A:9–402(1), *supra.*

Plaintiffs entered into four separate security agreements (Leases 6 through 9) with Waldick. However, Plaintiffs did not proceed to perfect their security interests under these agreements by filing said agreements in accordance with N.J.S.A. 12A:9–402(1). Instead, simultaneous with the execution of these lease agreements, Plaintiffs assigned the same to Leasing Service Corporation. Therefore, Plaintiffs assigned four unperfected security interests to Leasing Service. Leasing Service, the secured party by virtue of the assignments, then proceeded to perfect its security interests in the leases.

If the issue before the Court was identical to that in *In re McCroskey, supra.*, the Court would find in favor of the Plaintiffs. However, *McCroskey* can be easily distinguished from the facts in the case at bar.

In *McCroskey*, as in the case at bar, the secured party proceeded to perfect its security interest under a lease agreement by filing said agreement in accordance with 9–402(1). *In McCroskey*, the party who had filed in order to perfect his security interest pursuant to 9–402(1), was the same secured party who had signed the security agreement. In the case at bar, however, the secured party who had signed the security agreement, Snow Company or Snow Financial, was not the party who proceeded to perfect its security interest in accordance with 9–402(1). Instead, Leasing Service Corporation, who had now become the secured party by virtue of the assignment from the Plaintiffs, attempted to obtain

perfected status by filing a security agreement which it had not signed.

In order to have obtained perfected status, Leasing Service would have had to have filed its security agreements in accordance with N.J.S.A. 12A:9–402(1). The pertinent part of the statute reads:

"A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral .... A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.[3]

Leasing Service's filing does not comply with N.J.S.A. 12A:9–402(1) for the following reasons:

1. *Leasing Service did not sign the security agreement*

Leasing Service, as secured party, did not sign any of the security agreements for leases 6 through 9. Without Leasing Service's signature, the leases in question are merely unperfected security agreements between the Plaintiffs and Waldick. Leasing Service, as a separate legal entity, could not use the signatures of Snow Company or Snow Financial to perfect its security interests under the leases. *See In re Maple Contractors, supra.*, 172 N.J.Super. at 354–55, 411 A.2d 1186. The absence of Leasing Service's signature on the security agreements is enough, on its own, to render its security interests unperfected. However, Leasing Service fails to comply with N.J.S.A. 12A:9–402(1) in two other respects.

2. *Leasing Service's address is not given on the security agreements*

Nowhere, on any of the security agreements, is an address given for the secured party, Leasing Service Corporation.

**3.** Pre-Amendment version of N.J.S.A. 12A:9– 402(1).

### 3. The security agreements do not clearly identify Leasing Service as the secured party

The language contained in the security agreements executed by the Plaintiffs and Waldick does not clearly indicate that Leasing Service Corporation is the assignee of the Plaintiffs' interests under said agreements. The pertinent part of the Assignment Clause contained within each of the agreements reads as follows:

> "For valuable consideration, the receipt whereof is hereby acknowledged, the undersigned ("Lessor") hereby sells, assigns, transfers and sets over to *CREDIT ALLIANCE CORPORATION* and/or *LEASING SERVICE CORPORATION* ("Assignee")...... (emphasis added)

In light of points 1, 2 and 3 above, Leasing Service's filing clearly fails to comply with the requirements of N.J.S.A. 12A:9–402(1). Further, a security agreement which is void of the secured party's (1) true identity; (2) address; and, (3) signature, can not possibly give a searching party proper notice as required by the statute. *See* Comment of New Jersey Study N.J.S.A. 12A:9–402; Uniform Commercial Code Comment to N.J.S.A. 12A:9–402, *supra*.

Therefore, Leasing Service never obtained a perfected security interest in any of the equipment of the Debtor described in Leases 6 through 9. Thus, when Leasing reassigned these leases to Plaintiffs, the Plaintiffs received unperfected security interests which are voidable by the Trustee pursuant to 11 U.S.C. § 544 and N.J.S.A. 12A:9–301(1)(b).

### III. LEASE 10

■ Lease 10, which was executed on December 10, 1981, is subject to the amended version of N.J.S.A. 12A:9–402(1), adopted December 1, 1981. The statute, as amended, reads:

> "A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.... A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor."

Unlike the pre-amended version of N.J.S.A. 12A:9–402(1), the amended version does not require the secured party's signature on a security agreement which is filed as a financing statement in order to obtain perfected status. However, although Leasing Service's signature was not required on the security agreement for Lease 10, its filing still fails to comply with N.J.S.A. 12A:9–402(1) for the same reasons enumerated by the Court at Points 2 and 3 at page 16, herein:

### 2. Leasing Service's address is not given on the security agreement

Nowhere on the security agreement is an address given for the secured party, Leasing Service Corporation. Without said address, a searching party would not be able to ascertain the location of the secured party "from which information concerning the security interest may be obtained." N.J.S.A. 12A:9–402(1).

### 3. The security agreement does not clearly identify Leasing Service as the secured party

The language contained in the security agreement executed by the Plaintiffs and Waldick does not clearly indicate that Leasing Service Corporation is the assignee of the Plaintiffs' interests under said agreements. The pertinent part of the Assignment Clause contained within the security agreement reads as follows:

> "For valuable consideration, the receipt whereof is hereby acknowledged, the undersigned ("Lessor") hereby sells, assigns, transfers and sets over to *CREDIT ALLIANCE CORPORATION* and/or *LEASING SERVICE CORPORATION* ("Assignee")...... (emphasis added).

In light of Points 2 and 3 above, Leasing Service's filing clearly fails to comply with the requirements of N.J.S.A. 12A:9–402(1). Further, a security agreement which is

**202**

void of the secured party's (1) true identity; and, (2) address, can not possibly give a searching party proper notice as required by the statute. *See* Comment of New Jersey Study N.J.S.A. 12A:9–402; Uniform Commercial Code Comment to N.J.S.A. 12A:9–402, *supra.*

Therefore, Leasing Service never obtained a perfected security interest in any of the equipment of the Debtor described in Lease 10. Thus, when Leasing Service reassigned this lease to Plaintiffs, the Plaintiffs received an unperfected security interest which was voidable by the Trustee pursuant to 11 U.S.C. § 544 and N.J.S.A. 12A:9–301(1)(b).

CONCLUSION

For the aforementioned reasons, the Court hereby denies Plaintiffs' Complaint seeking relief from the automatic stay.

Let an Order be submitted consistent with this Opinion.