In re WALDICK AERO–SPACE
DEVICES, INC., Debtor.

FERDINAND J. SNOW COMPANY, INC.,
and Snow Financial Corp., Leasing Ser-
vice Corporation, Intervenor, Plaintiff-
Appellants,

v.

WALDICK AERO–SPACE DEVICES,
INC., and Richard R. Stout, Trustee,
Defendants-Appellees.

Civ. A. No. 85–4141.

United States District Court,
D. New Jersey.

March 31, 1987.

As Amended May 1, 1987.

Bathgate, Wegener, Wouters & Neu-
mann by Timothy P. Neumann, Lakewood,
N.J., for Waldick Aero-Space Devices, Inc.

Pitney, Hardin, Kipp & Szuch by Timothy R. Greiner, Morristown, N.J., for Richard R. Stout, trustee.

Schwartz, Tobia & Stanziale, Montclair, N.J., for Ferdinand J. Snow Co., Inc. and Snow Financial Corp.

Okin, Pressler, Cohen & Hollander, Fort Lee, N.J., for Leasing Services Corp.

## OPINION

RODRIGUEZ, District Judge.

On March 9, 1983 Waldick Aero-Space Defenses, Inc. ("Waldick") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1982 & Supp. 1984). Plaintiff-appellant Ferdinand J. Snow Company ("Snow Company") filed a complaint seeking relief from the automatic stay of 11 U.S.C. § 362. An amended complaint added Snow Financial Company ("Snow Financial") as a plaintiff.

The Trustee of Waldick moved for summary judgment and plaintiff-appellants filed a cross-motion for summary judgment. The Bankruptcy Court denied them relief from the automatic stay. *Ferdinand J. Snow Co. v. Waldick Aero-Space Devices, Inc. (In re Waldick Aero-Space Devices, Inc.)*, 49 B.R. 192 (Bankr. D.N.J. 1985).

28 U.S.C. § 158 (1984) confers appellate jurisdiction on this District Court, which granted the motion of Leasing Service Corporation ("Leasing Corp.") to intervene.

1. The leases assigned were Lease No. 6, dated October 30, 1978; Lease No. 7, dated April 30, 1980; Lease No. 8, dated June 16, 1980; Lease No. 9, dated September 18, 1981; and Lease No. 10, dated December 10, 1981.

Leases 6, 9 and 10 were signed by Waldick and Snow Company. Leases 7 and 8 were signed by Waldick and Snow Financial.

The financing statements corresponding to Leases 6, 9 and 10 contain the addresses of Leasing Corp. and Waldick, and the signature of Leasing Corp.

The financing statements corresponding to Leases 7 and 8 contain the addresses of Snow Financial and Waldick. The space for secured party's signature contains the typewritten words:

"Snow Financial Corporation (see attached)."

Assignments signed by Snow Financial and attached to Leases 7 and 8, provide:

The question before this court on appeal is whether a financing statement containing the debtor's typewritten name and incorporating by reference an attached lease signed by the debtor can satisfy the signature requirements of N.J. Stat. Ann. § 12A:9–402(1).

## STATEMENT OF FACTS

The facts of this case are not in dispute. Waldick manufactured quick release pins for aircraft landing gear. Snow Company sells and leases new and used machinery to businesses. Snow Financial is an enterprise related to Snow Company to assist in the sale and leasing of machinery by providing financing. Leasing Corp. is an equipment leasing and financial services corporation. Leasing Corp. also purchases equipment from other lessors who then assign their rights to Leasing Corp.

From 1978 to 1981, Snow Company leased several pieces of equipment to Waldick pursuant to ten separate lease agreements (the "Lease Agreements"). Snow Company and Snow Financial assigned their interest in five of the leases to Leasing Corp.[1] Nevertheless Snow Company and Snow Financial remained ultimately responsible for collection of any sums due under the terms of the leases.

The Lease Agreements provided in part:

In any jurisdiction where the Uniform Commercial Code is in effect Lessee

"For value received, we hereby sell, assign, and transfer to Credit Alliance Corporation and/or Leasing Service Corporation (each herein called "Credit"), its successors and assigns, the annexed conditional sales contract and/or lease and/or chattel mortgage (herein called "contract") dated April 30, 1980 between Snow Financial Corporation as Seller/Lessor/Mortgagee, and Waldick Aero Space Devices, Inc. ... as Buyer/Lessor/Mortgagor.

In each case the financing statement relating to a lease describes the collateral as:

All machinery, inventory, equipment and goods as described in attached entire agreement and/or in any schedule prepared in connection therewith. This UCC form together with the attached security agreement and/or schedule are being submitted for filing as a financial statement.

grants to Lessor a security interest in the equipment and any and all inventory, goods, equipment, machinery, fixtures and assets of any and every kind, wherever located, now or hereafter belonging to Lessee or in which Lessee has any interest.

An additional term provided,

Lessor is hereby authorized to file one or more financing statements *or a reproduction hereof as a financing statement.* [Emphasis added.]

Leasing Corp. filed with the Secretary of State both the Lease Agreements and financing statements corresponding to each lease.

In the space for signature of debtor each financing statement contains the typed notice:

"Waldick Aero-Space Devices, Inc." (See Attached)"

## DECISION BELOW

The Bankruptcy Court held that the Lease Agreements filed by Leasing Corp. were insufficient to perfect a secured interest because Snow Company assigned to Leasing Corp. only an unperfected status as secured party before Leasing Corp. filed financial statements. The Bankruptcy Court decided that the Lease Agreements did not satisfy N.J.Stat.Ann. § 12A:9–402(1) because (1) Leasing Corp. did not sign the leases, (2) the leases do not show Leasing Corp.'s address, and (3) the leases do not identify Leasing Corp. as the secured party.

## APPELLANTS' ARGUMENTS

Appellants maintain that in failing to consider whether the debtor's typewritten name on the financing statements constituted a signature, the Bankruptcy Court implicitly decided that the financing statements were invalid. Because the text of the Lease Agreement authorized Snow Company and Snow Financial "to file one or more financing statements", appellants argue, Waldick's signature on the lease agreements authenticated Waldick's typewritten name on the financing statements.

Alternatively, appellants contend that the Lease Agreements standing alone were adequate as financing statements to perfect the security interests granted pursuant to their terms. Appellants maintain that any subsequent assignment of these security interests did not affect their perfected status regardless of whether such assignments were reflected in the records of the Secretary of State.

## TRUSTEE'S ARGUMENT

The Trustee maintains that an unsigned financing statement to which a copy of the security agreement was attached is not sufficient to perfect a secured interest in personal property. *See Meads v. Dial Finance Company of Gadsden,* 56 Ala.App. 84, 319 So.2d 281 (Civ.App.1975); *Travelers Indemnity Company v. First National Bank of Jackson,* 368 So.2d 836 (Miss. 1979); *In re Pischke,* 11 B.R. 913 (Bankr.E. D.Va.1981).

Secondly, the Trustee contends that the assertion by appellants that Waldick's typewritten name on the financing statements is a signature, constitutes an entirely new contention on appeal. An appellate court should not consider arguments raised for the first time on appeal. *See Newark Morning Ledger Company v. United States,* 539 F.2d 929, 932 (3rd Cir.1976).

Thirdly, the Trustee argues that the filing system would be thrown open to fraud if a financing statement could be adequately authenticated by a debtor's typewritten name. *See e.g. In re Kane,* 1 U.C.C. Rep. 582, 586, 587 (E.D.Pa.1962).

## ANALYSIS

The opinion below refutes the Trustee's contention that appellants are raising a new issue upon appeal insofar as appellants insist that Waldick's signatures upon the leases were sufficient to satisfy the authentication requirement of N.J. Stat. Ann. § 12A:9–402(1). The Bankruptcy Court observed:

It is apparent to the court that both parties perceive that the outcome of the case at bar will turn on the issue of the

necessity of the debtor's signature on a financing statement pursuant to N.J.S.A. 12A:9–402(1). It is the opinion of the court that this is not the central issue, and accordingly, the court will decide the validity of the security interests in question upon different legal grounds ...

*In re Matter of Waldick Aero-Space Devices Inc.*, 49 B.R. 192, 198.

 With regard to this court's review of the Bankruptcy Court's factual determinations, the "clearly erroneous" standard applies.[2] Fed.R.Civ.P. 52(a); Rule 8013, Rules of Bankruptcy Procedure, 11 U.S.C.A. (West 1984 & Supp. 1986). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United State Gypsum Co.*, 333 U.S. 364, 365, 68 S.Ct. 525, 92 L.Ed. 746 (1948). This court concludes that the failure of the Bankruptcy Court to consider whether an otherwise complete financing statement was signed is clearly erroneous. If a debtor signs a lease with intent to authenticate a UCC–1 financing statement, the copy of that lease attached to an otherwise complete and sufficient financing statement perfects a security interest. *Jarratt v. Trend Mills*, 545 F.2d 1239, 1241 (9th Cir. 1976); *Benedict v. Lebowitz*, 346 F.2d 120 (2nd Cir.1965); *J.K. Merrill & Son Inc. v. Carter*, 108 Idaho 749, 702 P.2d 787 (1985). Moreover, the assignee of a secured party can perfect the security interest of his assignor after the assignment. N.J.Stat.Ann. § 12A:9–302(2); *Bramble Transportation, Inc. v. Sam Senter Sales, Inc.*, 294 A.2d 97 (Del.Super.Ct.1971) *aff'd* 294 A.2d 104 (Del. Sup.Ct.1972).

 Whether a security interest has been perfected against the trustee in bankruptcy is exclusively a question of state law. Therefore an analysis of that issue must consider the purpose of Article Nine, in particular N.J.Stat.Ann. § 12A:9–402(1)

(West 1962 & Supp.1986). Comment 2 to that section provides in part:

> [Section 9–402] adopts the system of 'notice filing' which proved successful under the Uniform Trust Receipts Act. What is required to be filed is not, as under chattel mortgage and conditional sales act, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiries from the parties concerned will be necessary to disclose the complete state of affairs.

In *Pinkerton's Inc. v. John A. Roebling Steel Corp.*, 186 N.J. Super. 10, 450 A.2d 1336 (Law.Div.1982), the Superior Court of New Jersey described the overall function of financing statements:

> The primary purpose of a financing statement is to put a searcher on notice that an underlying security agreement may be outstanding. *Maple Contractors, Inc. v. General Assignment*, 172 N.J. Super. 348, 356 [411 A.2d 1186] (Law Div.1979). The intention of *N.J. S.A.* 12A:9–402 is that the inquiring party be under a duty and be able by virtue of the financing statement to make sufficient further inquiries to determine the nature of the collateral relationship. *Id.* at 356 [411 A.2d 1186]. The section contemplates that the complete state of affairs will be learned only after such inquiry. (citations omitted).

*Id.* at 14, 450 A.2d 1336.

Although a typewritten name could supply notice at least as effectively as a signature, the Uniform Commercial Code Section 9–402(1) retains a formal requirement that the debtor sign a financing statement. Because four of the leases fall under the Pre-Amendment version and one followed

**2.** *But see 1616 Reminc Ltd Partnership v. Atchison & Keller*, 704 F.2d 1313 (4th Cir.1983), holding previous Bankruptcy Rule 810 unconstitutionally transfers the exercise of "The judicial power" of the United States from an Article III court to a non Article III bankruptcy referee, by limiting the district court to the "clearly erroneous" standard when reviewing a traditional state common law action.

the 1981 Amendments, we consider both versions:

*Pre-Amendment*

A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.... *A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.* (Emphasis added)

*Amended*

A financing statement is sufficient if it gives the names of the debtor and secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.... *A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor.* A carbon, photographic or other reproduction of a security agreement or a financing statement is sufficient as a financing statement if the security agreement so provides or if the original has been filed in this State. (Emphasis added.)

What results from this signature requirement has been termed a system of "authenticated notice filing." *In re Carlston,* 3 U.C.C. Rep. 766, 771 (D.Maine 1966). N.J. Stat.Ann. § 12A:9–203 Comment 5. " 'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing." N.J.Stat.Ann. § 12A:1–201(39). Comment 39 to § 1–201 provides:

The inclusion of authentication in the definition of "signed" is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or thumbprint. It may be on any part of

the document and in appropriate cases may be found in a billhead or letterhead. No catalogue of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question is always whether the symbol was executed or adopted by the party with the present intention to authenticate the writing.

As a guide to interpretation N.J.Stat.Ann. § 12A:1–102 provides:

This title shall be liberally construed and applied to promote its underlying purposes and policies ... to simplify, clarify and modernize the law governing commercial transactions.

■■■ An individual or corporate creditor can sign a financing statement by a typewritten signature. *Jarratt v. Trend Mills,* 545 F.2d 1239 (9th Cir.1976). Where a debtor intends to authenticate a writing, typing his name upon a UCC–1 financing statement can constitute a signature. *Benedict v. Lebowitz,* 346 F.2d 120 (2nd Cir. 1965). In *Jarratt,* the Ninth Circuit Court of Appeals reversed the District Court and held that the typewritten name of a creditor was sufficient to meet the signature requirements of 9–402(1). The United States Court of Appeals for the Second Circuit followed the same approach in *Benedict.*

In *J.K. Merrill & Son, Inc. v. Carter,* 108 Idaho 749, 702 P.2d 787 (1985), a trial court had found that the photocopy of a security agreement containing the debtor's signature did not satisfy the requirement of Idaho Code Section 28–9–402. The Idaho Supreme Court disagreed:

We conclude that the "signed by the debtor" language of I.C. § 28–9–402 means only that the security agreement had been signed by the debtor and a photocopy of that document is sufficient to perfect a security interest.

*Cf. In re Door Supply Center, Inc.,* 3 B.R. 103 [29 U.C.C.Rep.Serv. (Callaghan) 318] (Bankr.D.Idaho 1980).

In *Sommers v. International Business Machines,* 640 F.2d 686, 691 (5th Cir.1981), the court observed

> [T]he debtor's signature on the financing statement is not necessary when a copy of the security agreement is attached thereto, only if the copy of the security agreement itself is signed by the debtor, or if the security agreement contains language providing that a copy thereof may be used as a financing statement ...

*But see In re Carlston,* 3 U.C.C. Rep.Serv. 766, 772 (D.Maine, 1966) (distinguishing *Benedict v. Lebowitz,* and requiring handwritten signature for purposes of authentication); *In re Kane,* 1 U.C.C. Rep. 582 (E.D.Pa.1962); *Opinion of Attorney General of Kentucky,* 2 U.C.C.Rep. 269 (No. 64–708, 1964).

To interpret 9–402 of the Code in such a way as to exclude Leasing Corp. from the relationship of creditor would counter the stated purpose of the Code to permit continued expansion of commercial practices through custom, usage and agreement of the parties. N.J.Stat.Ann. § 12A:1–102(2)(b).

Where the space for debtor's signature on a financing statement was marked "See attached sheet" incorporating by reference a copy of an executed lease, the signature upon the attached lease satisfied the requirements of § 9–402. *In re McCroskey,* 4 U.C.C.Rep.Serv. 237 (Bankr.S.D.Ohio, 1966). *Cf. In re Thayer,* 38 B.R. 412, 420 (Bankr.D.Vt.1984).

In cases relied upon by the Trustee to assert a requirement of the debtor's handwritten signature, *In re Maple Contractors, Inc.,* 172 N.J.Super. 348, 411 A.2d 1186 (1979), *In re Pischke,* 11 B.R. 913 (Bankr.E.D.Va.1981), there was no evidence that a debtor knew or intended that a financing statement would be filed when he signed a security agreement. The issue in *Maple Contractors, supra,* was not whether the secured party had perfected his interest against the debtor's creditors, but the intrinsic validity of the asserted lien, i.e. whether a secured interest had attached.

Even if the Code required a handwritten signature, Waldick signed the lease which Leasing Corp. filed. The lease alone "adequately serves the purpose of the notice filing provisions of the Code." *Leasing Service Corp. v. American Nat. Bank & Trust Co.,* 19 U.C.C.Rep.Serv. (Callaghan) 252 (D.N.J. 1976).

■ A security interest can be perfected by the filing of a financing statement naming as secured party the assignee of the security interest rather than the original secured party. *Bramble Transportation, Inc. v. Sam Senter Sales, Inc.,* 294 A.2d 104, 10 U.C.C.Rep.Serv. (Callaghan) 939, 946 (Del.Sup.Ct.1972). *In re Thayer,* 38 B.R. 412 (Bankr.D.Vt.1984). *Cf. Industrial Packaging Products Co. v. Fort Pitt Packaging Int'l. Inc.,* 399 Pa. 643, 161 A.2d 19, 1 U.C.C.Rep.Serv. (Callaghan) 634 (1960) (agent of secured party held sufficient notice to creditors); *In re Cushman Bakery,* 526 F.2d 23 (1st Cir.1975), *cert. den.* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976) (nominee rather than principal secured creditor held sufficient); *In re Davidoff,* 10 U.C.C.Rep.Serv. (Callaghan) 725 (Bankr.S.D.N.Y.1972) (assignee that no longer existed as corporate entity did not render filing defective).

■ In the instant case, the Bankruptcy Court found that Waldick signed the leases. *In re Waldick,* 49 B.R. 192, 193 (1985). By attaching Waldick's signature on the lease to an otherwise complete and valid financial statement, Leasing Corp. gave creditors notice of a secured interest authenticated by Waldick's signature.

## CONCLUSION

This court reverses and sets aside the Bankruptcy Court order granting the motion of the Trustee in bankruptcy for summary judgment. On appeal this court determines under N.J. Stat.Ann. § 12A:9–402(1) that petitioners hold a valid security interest in the assets of debtor and remands to the Bankruptcy Court for further proceedings consistent with this opinion.