In re KARISDA, INC., d/b/a Curry Printing, Debtor.

Robert F. ANDERSON, Trustee, Plaintiff,

v.

Stephen L. BLACKMAN and Sarah K. Blackman, Defendants.

In re William P. BRIXON, Jr., a/k/a Rick Brixon, d/b/a Curry Printing, Debtor.

Robert F. ANDERSON, Trustee, Plaintiff,

v.

Stephen L. BLACKMAN and Sarah K. Blackman, Defendants.

Bankruptcy Nos. 88–00384, 88–00385. Adv. Nos. 88–0077, 88–0082.

United States Bankruptcy Court, D. South Carolina.

Aug. 10, 1988.

Robert F. Anderson, Robert F. Anderson, P.A., Columbia, S.C., pro se.

Ivan N. Nossokoff, Columbia, S.C., for defendants.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Chief Judge.

In each of the above adversary proceedings, the trustee seeks to avoid, pursuant to 11 U.S.C. § 547(b),[1] a transfer between the above named debtors and the defendants, which transfer is more fully described below.

The trustee, pursuant to Fed.R.Civ.P. 56 and Bankruptcy Rule 7056, has filed in each adversary proceeding, a motion for summary judgment. Stephen L. Blackman and Sarah K. Blackman, the defendants in each of the adversary proceedings, have objected to the motions.

It appearing from statements of counsel that the causes of action, the parties, and the facts are identical in the two proceedings, this court, upon motion and after a hearing on June 22, 1988, consolidated, by order dated July 8, 1988, the two adversary proceedings.

For the reasons given below, the trustee's motions for summary judgment should be granted.

## FACTS

William P. Brixon, Jr., is the debtor in one of the adversary proceedings which has been consolidated. Karisda, Inc., d/b/a/ Curry Printing is the debtor in the other adversary proceeding which has been consolidated. Karisda, Inc., is wholly owned by William P. Brixon, Jr. These debtors are parties to the transactions and instruments at issue in these adversary proceedings collectively, and they are referred to hereinafter as the debtors.

On or about February 1, 1982, the debtors purchased from the defendants the furniture, fixtures, inventory, good will and other assets of Curry Printing. In order to secure payment of the purchase price, each debtor, on or about February 2, 1982, granted to the defendants a security interest in the property sold, which security interest was perfected by the filing of a UCC financing statement in the office of the Secretary of State of South Carolina and in the office of the Register of Mesne Conveyances of Charleston County, South Carolina. The stated maturity date on the financing statement is January 1, 1992.

South Carolina Code § 36–9–403(2) (1976) provides that such financing statements are effective for five years unless a continuation statement is filed before the end of the five year period. A continuation statement, so filed, continues the perfected status of the original financing statement without interruption. S.C.Code § 36–9–403(3) (1976).

---

1. Further references to the Bankruptcy Code (11 U.S.C. §§ 101 et. seq.) shall be by section numbers only.

The defendants filed no such continuation statement. However, on January 15, 1988, a second financing statement, listing the identical security set forth in the original financing statement, was filed in the Office of the Secretary of State for South Carolina.

Between February 2, 1987 and January 15, 1988, there were no intervening lien creditors and no *bona fide* purchasers for value of the debtors' assets.

On February 9, 1988, the debtors filed their respective petitions for relief under chapter 7 of the Bankruptcy Code.

Claiming, *inter alia,* that the filing of the second financing statement had the effect of improving the position of the defendants as against other creditors, the trustee, on March 21, 1988, commenced these (now consolidated) adversary proceedings in order to void, as a preference pursuant to § 547(b), the security interest claimed by the defendants in property of the debtors.

## QUESTION

If there are no genuine issues of material fact so that it would be proper, pursuant to Bankruptcy Rule 7056 and Fed.R.Civ.P. 56, to dispose of these consolidated adversary proceedings by summary judgment, is the filing of the second financing statement above described a preferential transfer within the meaning of § 547(b)?

## DISCUSSION AND CONCLUSION

In order to resolve the issue, the court must determine whether the execution and filing of the second financing statement effectuates a "transfer" of an interest of each debtor within the meaning of § 547(b).

In relevant part, § 547 states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of the transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

For the purposes of § 547(b), "transfer" means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." § 101(50).

"Because the definition of 'transfer' is comprehensive, every conceivable type of transfer may be avoided if the other requirements of § 547(b) are met." 4 *Collier on Bankruptcy* ¶ 547.03, p. 547–17 (15th ed. 1979), (citation omitted).

It appears that a transfer of an interest of each debtor in property has been attempted; therefore, we should determine if the other elements of § 547(b) are present.

In that no continuation statement was filed, the defendants' security interest in the assets listed on the original financing statement became unperfected 60 days after February 2, 1987. S.C.Code § 36–9–302 (1976). The rights of a secured creditor who allows his perfected status to lapse are, pursuant to S.C.Code § 36–9–301(1)(b) (1976), subordinate to those of a trustee in bankruptcy. See S.C.Code § 36–9–301(1)(d) (1976); *In re Waldick Arrow–Space Devices, Inc.,* 49 B.R. 192, (Bankr.D.N.J.1985); *In re York Chemical Industries, Inc.,* 30 B.R. 583, 585 (Bankr.D.S.C.1983).

By filing the second financing statement, the defendants, for the second time, attempted to perfect their security interest in certain assets of the debtors. Because there were no intervening lien creditors and no *bona fide* purchasers for value of the debtors' assets during the period between the lapse of the defendants' perfected status (April 2, 1987) and the filing of the second financing statement (January 15, 1988), the second filing, if valid, has the effect of improving the defendants' position against the trustee. The rights of a perfected secured creditor are not subordinate to those of a trustee. *See* S.C.Code § 36–9–301(1)(3).

Therefore, it appears that the transfer, if sustained, benefitted a creditor as required by § 547(b)(1).

In that the original financing statement filed on February 2, 1982, and the second financing statement list the same assets, it appears that the alleged transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made." § 547(b)(2).

The defendants concede that the debtors were insolvent during the ninety days preceding the filing of the petitions for relief. The requirement of § 547(b)(3) is met.

It is not disputed that the alleged preferential transfer took place "within 90 days before the filing of the petition." § 547(b)(4).

It further appears that the transfer, if valid, enabled the defendants to receive more than they would have received if the case were a case under chapter 7, the transfer had not been made, and the defendants received payment of such debt to the extent provided by the Bankruptcy Code. § 547(b)(5).

In order to perfect their security interest in property of the debtors, the defendants were required to file a financing statement in accordance with the provisions of S.C. Code § 36–9–302 (1976). The defendants' original financing statement lapsed 60 days after February 2, 1987, and the defendants' security interest thus became unperfected. S.C.Code § 36–9–402(2) (1976). The rights of a secured creditor who allows his per-

fected status to lapse are, pursuant to S.C. Code § 36–9–301(1)(b) (1976), subordinate to those of a trustee in bankruptcy. Before the second filing on January 15, 1988, the defendants' security interest had become subordinate to that of the trustee, *see also* § 544, and the defendants would have become unsecured creditors. If valid, the second financing statement reperfected the defendants' security interest in the debtors' property. As there were no intervening lien creditors or *bona fide* purchasers for value of the debtors' assets between April 2, 1987 and January 15, 1988, the January 15, 1988 transfer (unless the transfer is preferential) would have afforded the defendants, as holders of a perfected first lien on the debtors' property, the right to receive their property if undersecured pursuant to § 554, or, if oversecured, to receive the first distribution of proceeds, plus interest, and possibly "any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." § 506(b).

Thus, it is clear that the attempted transfer enabled the defendants to receive more than they would have received if the transfer had not been made and the defendants received a distribution as unsecured creditors. § 547(b).

The plaintiff has proven all of the elements of a preferential transfer under § 547(b). Having done so, it appears that the filing of the second financing statement on January 15, 1988, constitutes a "transfer" for the purposes of § 547(b).

■ The defendants' arguments regarding the effect of a creditor's knowledge of a lapsed financing statement are without merit. Knowledge of a lapsed financing statement is immaterial: once the statement lapses, the security interest becomes unperfected, and, by the provisions of S.C. Code § 36–9–301(1)(b) and (3), the rights of a secured creditor whose perfected status lapses are subordinate to those of a trustee in bankruptcy. *In re York Chemical Industries, Inc., supra; Bostwick–Braun Company v. Owens,* 634 F.Supp. 839 (E.D. Wis.1986); *In re Wicaco Machine Corp.,* 49 B.R. 340 (Bankr.E.D.Pa.1984).

The trustee has met his burden of proving the avoidability of the transfer, and the defendants have failed to prove the nonavoidability of the transfer. § 547(g).[2]

There being no genuine issue of material fact, the plaintiffs' motions for summary judgment should be granted, and the filing of the second financing statement should be avoided pursuant to § 547(b). *See* Fed. R.Civ.P. 56.

AND IT IS SO ORDERED.

**2.** 11 U.S.C. § 547(g): For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.